UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**DRIVETIME CAR SALES COMPANY, LLC,**

     **Plaintiff,**

  v.                                            **Case No.: 2:17-cv-371**
                                                **JUDGE GEORGE C. SMITH**
                                                **Magistrate Judge Vascura**

**BRYAN PETTIGREW,** *et al.***,**

     **Defendants.**

## OPINION AND ORDER

This matter is before the Court upon Defendant Pauley Motor Car Co. Preowned Vehicles, LLC's Motion for Judgment on the Pleadings ("Pauley Motor's Motion") (Doc. 16) and Defendant Bryan Pettigrew's Motion for Judgment on the Pleadings ("Pettigrew's Motion") (Doc. 19). The motions are both fully briefed and ripe for disposition. For the following reasons, Pauley Motor's Motion is **GRANTED** and Pettigrew's Motion is **GRANTED IN PART** and **DENIED IN PART**.

        **I.**      **BACKGROUND**

Plaintiff DriveTime Car Sales Company, LLC ("DriveTime"), a citizen of Arizona, is a used vehicle retailer who acquires its vehicles primarily from used vehicle auctions around the country. (Doc. 12, Am. Compl. ¶ 11). Defendant Bryan Pettigrew (a citizen of Ohio) is a former employee of DriveTime (a citizen of West Virginia), who was responsible for purchasing vehicles on DriveTime's behalf at the Columbus Fair Auto Auction. (*Id.* ¶ 16). During the period of January through June 2016, Pettigrew purchased an unusually large number of vehicles from Defendant Pauley Motor at what DriveTime contends were above-market rates. (*Id.* ¶¶ 26–

39). DriveTime also alleges that Pettigrew was observed, by another vehicle wholesaler, receiving cash from a representative of Pauley Motor in the restroom at the Columbus auction. (*Id.* ¶ 25). On the basis of these facts, DriveTime alleges that "Pettigrew received improper pecuniary compensation, i.e., kickbacks, for purchasing vehicles for [DriveTime] at inflated prices from Defendant Pauley" (*Id.* ¶ 45) and that "Defendant Pauley conspired . . . to and engaged in a scheme to induce Pettigrew to violate his duties to DriveTime by purchasing vehicles on behalf of [DriveTime] at the Columbus Auction at inflated prices to Defendant Pauley's benefit." (*Id.* ¶ 46). DriveTime estimates that it has been damaged in an amount in excess of $250,000 as a result of Pettigrew's overpayments for vehicles purchased from Pauley Motor. (*Id.* ¶ 38).

Further, DriveTime alleges that during the January–June 2016 period, Pauley Motor regularly gave purchasers of vehicles at the Columbus auction a gift card or other remuneration in the amount of $100. (*Id.* ¶ 40). However, Pettigrew "retained for himself" the value of these gift cards for vehicles purchased from Pauley Motor on behalf of DriveTime and "failed to turn over gift cards or the cash equivalent to [DriveTime]." (*Id.* ¶¶ 41, 54). DriveTime alleges that Pettigrew purchased 572 such vehicles from Pauley Motor, and that therefore DriveTime has further been damaged in the amount of $57,200. (*Id.* ¶¶ 41–42).

DriveTime commenced this action on May 1, 2017, and, after amending its Complaint on July 11, 2017, asserts seven causes of action: (1) theft of the gift cards, under Ohio Revised Code § 2703.61, against Pettigrew; (2) conversion of the gift cards, against Pettigrew; (3) fraud, against Pettigrew; (4) breach of the duty of good faith and loyalty, against Pettigrew; (5) unjust enrichment, against Pauley Motor; (6) theft of the vehicle overpayments, under § 2703.61,

against both Pettigrew and Pauley Motor; and (7) civil conspiracy to commit theft of the vehicle overpayments, against both Pettigrew and Pauley Motor. (*Id.* ¶¶ 52–104).

Both defendants filed Answers to DriveTime's Amended Complaint (Docs. 14–15). On August 9 and August 22, 2017, respectively, Pauley Motor and Pettigrew filed separate Motions for Judgment on the Pleadings. (Docs. 16, 19). Pettigrew has moved for judgment on both theft claims and the conversion and civil conspiracy claims, but does not challenge in this motion DriveTime's claims for fraud or breach of the duty of good faith and loyalty against him. Pauley Motor has moved for judgment on the theft and civil conspiracy claims against it, but does not challenge Drive Time's claim for unjust enrichment.

## II. JUDGMENT ON THE PLEADINGS STANDARD

Pettigrew and Pauley Motor bring these motions pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." The standard of review for a motion for judgment on the pleadings under Rule 12(c) is the same as that used to address a motion to dismiss under Rule 12(b)(6). *Id.*; *Lindsay v. Yates*, 498 F.3d 434, 438 (6th Cir. 2007).

Rule 12(b)(6) permits dismissal of a lawsuit for "failure to state a claim upon which relief can be granted." To meet this standard, a party must allege sufficient facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). A pleading will satisfy this plausibility standard if it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering whether a complaint fails to state a claim upon which relief can be granted, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the

3

plaintiff." *Ohio Police & Fire Pension Fund v. Standard & Poor's Fin. Servs. LLC*, 700 F.3d 829, 835 (6th Cir. 2012) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 663. Thus, while a court is to afford plaintiff every inference, the pleading must still contain facts sufficient to "provide a plausible basis for the claims in the complaint;" a recitation of facts intimating the "mere possibility of misconduct" will not suffice. *Flex Homes, Inc. v. Ritz-Craft Corp of Mich., Inc.*, 491 F. App'x 628, 632 (6th Cir. 2012); *Iqbal*, 556 U.S. at 679.

In sum, "[f]or purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (quoting *S. Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973)).

### III. DISCUSSION

Collectively, Pettigrew and Pauley Motor seek judgment in their favor on Counts 1 (theft of the gift cards), 2 (conversion of the gift cards), 6 (theft of the vehicle overpayments), and 7 (conspiracy to commit theft of the overpayments). The Court will consider each count in turn.

**A.   Count 1: Theft of the gift cards by Pettigrew**

   **1.   Statutory authority for civil action for damages arising from a criminal theft offense**

DriveTime brings its claims for theft under Ohio Revised Code § 2703.61, which authorizes the recovery of damages from "any person . . . who commits a theft offense" by a property owner who "brings a civil action pursuant to division (A) of section 2307.60 of the

4

Revised Code." § 2307.61(A). Section 2307.60(A) provides that "[a]nyone injured in person or property by a criminal act has, and may recover full damages in, a civil action unless specifically excepted by law."

Pettigrew initially argued that §§ 2307.60–61 do *not* authorize a civil cause of action, citing since-overruled Ohio case law. *Biomedical Innovations, Inc. v. McLaughlin*, 103 Ohio App.3d 122, 126, 658 N.E.2d 1084 (10th Dist. 1995). For some time, Ohio appellate courts disagreed about whether § 2307.60's statement that anyone injured by a criminal act "has . . . a civil action" actually *created* a civil cause of action, or was "merely a codification of the common law that a civil action is not merged in a criminal prosecution." *Sollenberger v. Sollenberger*, 173 F. Supp. 3d 608, 636 (S.D. Ohio 2016). But in 2016, the Ohio Supreme Court clarified that the plain language of the statute "creates a statutory cause of action for damages resulting from any criminal act." *Jacobson v. Kaforey*, 149 Ohio St. 3d 398, 2016-Ohio-8434, ¶ 10.

Once DriveTime pointed out the overruling of the case law relied on by Pettigrew, Pettigrew changed tacks and argued that DriveTime had brought its theft claims under the wrong statute: in its Amended Complaint, DriveTime cited § 2703.61 (which creates the remedy), not § 2703.60 (which creates the cause of action). In support of this argument, Pettigrew cited *Shaw v. Marion Laborers Local 574*, in which the plaintiff also invoked § 2703.61 instead of § 2703.60. 3d Dist. Marion No. 9-13-31, 2014-Ohio-3672, ¶ 43. While the *Shaw* court did note that the plaintiff "never brought a civil action pursuant to the proper section of the Revised Code," and that "[i]t appears [the plaintiff] mislabeled the section under which it was bring its claim for civil damages resulting from the alleged criminal act," the *Shaw* court then went on to analyze the plaintiff's claim as one brought under § 2703.60. The court ultimately dismissed the

claim, not because the plaintiff cited the incorrect Code section, but because the elements of § 2703.60 were not met. *Id.* ¶ 46. *Shaw* is therefore of no aid to Pettigrew on this point.

Indeed, a court would impermissibly elevate form over substance to bar claims expressly invoking § 2703.61 merely because the complaint did not also expressly invoke § 2703.60. "[T]he Rules require that we not rely solely on labels in a complaint, but that we probe deeper and examine the substance of the complaint. Indeed, [the Sixth Circuit] has made clear that 'the label which a plaintiff applies to a pleading does not determine the nature of the cause of action which he states.'" *Minger v. Green*, 239 F.3d 793, 799 (6th Cir. 2001) (quoting *United States v. Louisville & Nashville R. Co.*, 221 F.2d 698, 701 (6th Cir. 1955)).

In this case, Section 2307.61 explicitly states that any recovery under that section would be obtained through a civil action authorized by § 2703.60. It is therefore inaccurate to characterize DriveTime's Amended Complaint as "mislabeling" the theft claims. But even if it were not, the theft claims in substance seek damages resulting from a criminal act. (Doc. 12, Am. Compl. ¶ 58) ("[Pettigrew] acted with purpose to deprive [DriveTime] of property by deception in violation of Ohio's criminal Theft statute and, therefore, is liable to Plaintiff . . . ."). This alone would be sufficient for the Court to interpret DriveTime's theft claims as ones brought under § 2703.60. As a result, DriveTime's theft claims are not barred by lack of statutory authority.

### 2. Sufficiency of allegations of possession

Pettigrew also contends that DriveTime failed to sufficiently allege that Pettigrew ever had the gift cards in his possession, which is an element of the underlying theft offense. According to Pettigrew, "DriveTime's failure to assert even one factual allegation that Pettigrew actually accepted even one gift card or anything of value from Pauley Motor Car for the purchase of even one vehicle is fatal to this claim." (Doc. 19, Pettigrew's Motion at 6–7). While it is true

that the offense of theft requires one to "knowingly obtain or exert control over [ ] the property," R.C. § 2913.02(A), the Court finds that DriveTime has sufficiently pleaded Pettigrew's possession of the gift cards. DriveTime's Amended Complaint includes the following factual allegations:

- "From at least January to June of 2016, when Defendant Pauley sold a vehicle at the Columbus Auction, it gave to the purchaser of the vehicles a gift card or other remuneration in an amount of $100." (¶ 40).

- "Plaintiff, as the rightful purchaser of the 572 vehicles purchased for it by Defendant Pettigrew in 2016, was therefore entitled to $57,200 from those transactions; however, *Defendant Pettigrew failed to turn over gift cards* or the cash equivalent to Plaintiff." (¶ 41).

- "Upon information and belief, Plaintiff alleges that *Defendant Pettigrew received monetary compensation*, or some other compensation with pecuniary value, *in addition to and beyond the $100 gift cards referenced above*, in exchange for buying vehicles at inflated prices from Defendant Pauley to Plaintiff's detriment." (¶ 47).

- "Plaintiff had *an ownership right in the gift cards* and their fungible value, *which Defendant Pettigrew violated by retaining for himself*, and which damaged Plaintiff in the amount of the value of the gift cards." (¶ 54).

(emphases added).

Pettigrew could not have "failed to turn over" or "retained for himself" that which he never had in his possession. Further, DriveTime alleges that Pettigrew "received monetary compensation . . . in addition to and beyond the $100 gift cards," which syntactically makes sense only if Pettigrew also "received" the gift cards. These allegations are therefore sufficient to raise a reasonable inference under *Twombly* and *Iqbal* that Pettigrew "obtained or exerted control" over the gift cards, as required by the theft statute.

Accordingly, Pettigrew is not entitled to judgment on the pleadings on DriveTime's claim for theft of the gift cards.

### B. Count 2: Conversion of the gift cards by Pettigrew

Pettigrew similarly challenges DriveTime's conversion claim on the basis that DriveTime has not sufficiently alleged that Pettigrew exercised dominion or control over the property as required by the elements of conversion. *Joyce v. Gen. Motors Corp.*, 49 Ohio St.3d 93, 96, 551 N.E.2d 172, 175 (1990). Pettigrew contends that "[a]bsent specific factual allegations of possession and control, DriveTime's claim for conversion fails and must be dismissed." (Doc. 24, Pettigrew's Reply at 4).

Again, the Court finds that DriveTime has sufficiently alleged that Pettigrew possessed and controlled the gift cards. The specific factual allegations noted *supra* are sufficient to raise a reasonable inference to that effect. Therefore, Pettigrew is not entitled to judgment on the pleadings on DriveTime's conversion claim.

### C. Count 6: Theft of the vehicle overpayments by Pettigrew and Pauley Motor

DriveTime has alleged that Pettigrew's and Pauley Motor's scheme to cause DriveTime to overpay for vehicles constitutes theft by deception under Ohio Revised Code § 2913.02(A)(3). "Deception" is defined for the purpose of this statute as "knowingly deceiving another or causing another to be deceived by any false or misleading representation, by withholding information, by preventing another from acquiring information, or by any other conduct, act, or omission that creates, confirms, or perpetuates a false impression in another, including a false impression as to law, value, state of mind, or other objective or subjective fact." R.C. § 2913.01(A).

Pauley Motor contends (and Pettigrew adopts Pauley Motor's arguments) that DriveTime's theft claim is not viable because DriveTime has not alleged any knowing false or misleading representation. (Doc. 16, Pauley Motor's Motion at 9–12). Pauley Motor points out that it sold its vehicles at an open auction where all information about the prices Pettigrew paid for its vehicles, and the bidding activity by competitors on those vehicles, was available to the

public, including DriveTime. Nor has DriveTime alleged that Pauley Motor made any false representation or misleading omission about the fair market value of its vehicles.

DriveTime counters that its allegations of the kickback scheme sufficiently establish Pauley Motor's and Pettigrew's deception. (Doc. 22, DriveTime's Memo. in Opp. at 6–9). DriveTime identified the specific percentages by which it believes Pettigrew overpaid for a sample of 17 of the 572 vehicles that Pettigrew purchased from Pauley Motor during the period of January–June 2016. (Doc. 12, Am. Compl. ¶ 36). DriveTime arrived at these percentages by comparing the purchase price paid by Pettigrew with the base cost assigned to each vehicle by the National Automobile Dealers Association ("NADA"). (*Id.* ¶ 29). DriveTime expects its buyers to pay, on average, less than 100% of the NADA base cost for a vehicle. (*Id.*). Pettigrew met this benchmark for vehicle sellers other than Pauley Motor; however, Pettigrew paid on average 106.75% of the NADA base cost for vehicles purchased from Pauley Motor. (*Id.* ¶¶ 31–32). Moreover, more than two-thirds of Pettigrew's purchases from Pauley Motor were at a price greater than 100% of the NADA base cost. (*Id.* ¶ 35). DriveTime contends that these inflated purchase prices, in combination with the allegations of Pettigrew receiving cash from a representative of Pauley Motor in the restroom of the Columbus auction, are sufficient to allege theft by deception on the part of both Pauley Motor and Pettigrew.

However, the only actual *deception* that DriveTime alleges is that Pauley Motor and Pettigrew made "false and misleading representations about the fair market values of the purchased vehicles." (Doc. 22, DriveTime's Memo. in Opp. at 7). Specifically, the Amended Complaint alleges that Pettigrew and Pauley "caus[ed] [DriveTime] to believe that Defendant Pettigrew was paying fair market value for the vehicles." (Doc. 12, Am. Compl. ¶ 90). But while Pettigrew may have been overpaying for the vehicles, DriveTime has not alleged that the

NADA base cost for each of the vehicles purchased by Pettigrew was unknown to, mispresented to, or concealed from DriveTime. DriveTime simply didn't bother to check Pettigrew's purchase prices against the NADA base costs until it learned in June 2016 that Pettigrew had received cash from a Pauley Motor representative. (*Id.* ¶ 26). And while DriveTime alleges that an assistant director of purchasing raised concerns with Pettigrew in March 2016 regarding his high overall purchase costs and the high volume of purchases from Pauley Motor, DriveTime conspicuously does not allege that Pettigrew defended his purchase costs on the basis that they were in line with the vehicles' fair market value (or even mention any response by Pettigrew to these concerns). (*Id.* ¶¶ 23–24). Pettigrew may have been doing a poor job of maintaining an average purchase price below the NADA base cost, but it does not automatically follow that his poor performance is equivalent to deception about the vehicles' fair market value.

Deception is a necessary element of DriveTime's claim for theft of the vehicle overpayments. *See State v. Helferich*, 12th Dist. Clermont No. CA85-12-110, 1987 WL 4821, at *2 (Apr. 20, 1987) (no jury question on charge of theft by deceit when there was "no proof of any specific false or misleading representations made by appellant to the victim of the offense"); *State v. Brookover*, 4th Dist. Washington No. 82X19, 1983 WL 3129, at *2 (Feb. 22, 1983) (theft by deception requires the defendant to have obtained or exerted control over property by a "false or misleading representation"). Because DriveTime has not sufficiently alleged any deception as to the vehicles' fair market value by either Pauley Motor or Pettigrew, Count 6 of Drive Time's Amended Complaint must be dismissed.[1]

---

[1] Pettigrew also argued that no civil cause of action exists for damages resulting from criminal theft by deception. Just as with the gift card theft claim, this argument has been rejected by the Ohio Supreme Court in *Jacobson*. Additionally, Pauley Motor argued that the theft claim against it is barred by the statute of limitations. Because the substantive allegations fail to state a theft claim against Pauley Motor, the Court need not address this argument.

**D.    Count 7: Civil conspiracy to commit theft of the vehicle overpayments by Pettigrew and Pauley Motor**

In order to prevail on a claim for civil conspiracy under Ohio law, a plaintiff must establish the following elements: (1) a malicious combination, (2) involving two or more persons, (3) causing injury to person or property, and (4) the existence of an unlawful act independent from the conspiracy itself. *Maxey v. State Farm Fire & Cas. Co.*, 689 F. Supp. 2d 946, 954 (S.D. Ohio 2010) (Spiegel, J.) (citing *Pappas v. Ippolito,* 177 Ohio App.3d 625, 895 N.E.2d 610, 623 (2008)). Notably, "[a] civil conspiracy claim is derivative and cannot be maintained absent an underlying tort that is actionable without the conspiracy." *Stillwagon v. City of Delaware*, 175 F. Supp. 3d 874, 909–10 (S.D. Ohio 2016) (Sargus, C.J.) (quoting *Morrow v. Reminger & Reminger Co., L.P.A.*, 183 Ohio App.3d 40, 2009–Ohio–2665, 915 N.E.2d 696, ¶ 40 (10th Dist.)).

DriveTime's claim for civil conspiracy is based on the underlying tort of theft of the vehicle overpayments. (Doc. 22, DriveTime's Mem. in Opp. at 12) ("Plaintiff does allege an underlying unlawful act attributable to Defendant Pauley: that underlying act is *theft*.") (emphasis in original). DriveTime does not argue that its civil conspiracy claim derives from any of its other claims, such as fraud or unjust enrichment, which the defendants do not challenge in their motions. However, as discussed *supra*, DriveTime has not sufficiently alleged a claim for theft of the vehicle overpayments against either Pettigrew or Pauley Motor. Without a viable claim for theft, DriveTime's Amended Complaint likewise "fails to state a cause of action for the derivate claim of conspiracy." *Morrow*, ¶ 40. Accordingly, Count 7 of DriveTime's Amended Complaint must be dismissed.

## IV. CONCLUSION

For the foregoing reasons, Pauley Motor's Motion for Judgment on the Pleadings is **GRANTED** and Pettigrew's Motion for Judgment on the Pleadings is **GRANTED IN PART** and **DENIED IN PART**. Counts 6 and 7 of the Amended Complaint are **DISMISSED**.

The Clerk shall remove Documents 16 and 19 from the Court's pending motions list.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　　　*/s/ George C. Smith*
　　　　　　　　　　　　　　　　　　　　　　**GEORGE C. SMITH, JUDGE**
　　　　　　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT COURT**