# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| DriveTime Car Sales Company, LLC | : | |
| | : | Case No: 2:17-cv-00371 |
| Plaintiff, | : | |
| vs. | : | Judge George C. Smith |
| | : | |
| Bryan Pettigrew, et al. | : | Magistrate Judge Chelsey M. Vascura |
| | : | |
| Defendants. | : | |

## PLAINTIFF'S MOTION FOR SPOLIATION SANCTIONS

Now comes Plaintiff DriveTime Car Sales Company, LLC ("DriveTime"), by and through counsel and pursuant to Fed. R. Civ. P. 37, who hereby respectfully moves this Court for an Order sanctioning Defendant Pauley Motor Car Company ("Pauley Motor") for its failure to preserve or produce critical text messages in this litigation. DriveTime respectfully submits that this Court should impose a mandatory adverse inference against Pauley Motor as a sanction for its discovery misconduct along with attorneys' fees associated with bringing this Motion.

Pauley Motor's owner Bruce Pauley ("Mr. Pauley") admitted under oath that he has text message communications with Bryan Pettigrew ("Pettigrew"); however, Pauley Motor has failed to produce any throughout this litigation. To make matters worse, Mr. Pauley misled DriveTime for months and now has effectively acknowledged that the text messages from the relevant time period were destroyed because he has a new cell phone—despite the fact that he received a litigation hold letter from DriveTime on November 26, 2016. Pauley Motor—and Mr. Pauley in particular—has shirked its obligation to preserve critical evidence related to this case and wholly failed to comply with its duty to engage in the discovery process in good faith. As such, a mandatory adverse inference is the appropriate sanction warranted by Pauley Motor's misdeeds.

The reasons in support of this Motion are set forth more fully in the accompanying Memorandum in Support.

Respectfully submitted,

/s/ Jonathan R. Secrest
Jonathan R. Secrest (0075445)
David A. Lockshaw, Jr. (0082403)
DICKINSON WRIGHT PLLC
150 East Gay Street, Suite 2400
Columbus, Ohio 43215
Telephone (614) 744-2945
Facsimile (844) 670-6009
jsecrest@dickinsonwright.com
dlockshaw@dickinsonwright.com
*Counsel for Plaintiff*

## **MEMORANDUM IN SUPPORT**

**I.     INTRODUCTION**

Pauley Motor and Mr. Pauley have completely ignored their obligations throughout these proceedings and have ignored DriveTime's rights in this case. As a consequence, key text message communications were destroyed. Also, Pauley Motor's constantly changing position and representations coupled with its refusal to produce the text messages that it admittedly possesses, evidence its unwillingness to participate in good faith in the discovery process. Sanctions are justified here, and the appropriate sanction is a mandatory adverse inference regarding the text messages that were never produced and are now destroyed.

**II.    FACTUAL BACKGROUND**

This case stems from the unlawful actions of Pettigrew and Pauley Motor, which caused DriveTime to pay Pauley Motor hundreds of thousands of dollars more than it should have for used cars. DriveTime hired Pettigrew as a buyer. His main job duty was to purchase used vehicles at various car auctions so that DriveTime, in turn, could sell those cars to consumers.

2

Pettigrew purchased vehicles from Pauley Motor at the Columbus Fair Auto Auction ("CFAA"). Unbeknownst to DriveTime, Pettigrew received cash kickbacks from Pauley Motor for overpaying for vehicles he purchased from Pauley Motor. DriveTime came to learn that Pettigrew would receive the cash kickbacks in the bathroom of the CFAA from Pauley employees. (*See* Tyler Depo. 59:1-4, ECF 84 ("Q: What did Mr. Stratton tell you? A: That he saw Bruce [Pauley] giving Bryan [Pettigrew] a bunch of hundreds in the restroom.").) That information becomes even more significant when considered in conjunction with the business dealings between Pettigrew and Pauley Motor, and the missing text messages.

Pettigrew bought an abnormally large number of vehicles from Pauley Motor. In fact, Pettigrew purchased 570 vehicles from Pauley Motor during the first half of 2016. (*See* Pettigrew Depo. 163:6-11, ECF 77.) No other buyer purchased as many vehicles from Pauley Motor at the CFAA during this time period. (*Pauley Motor Response to Plaintiff's First Set of Interrogatories and Request for Production of Documents*, attached hereto as Exhibit 1.) On average, Pettigrew paid roughly 6%-7% *over* the National Automotive Dealers Association ("NADA") value, which is the book value for used cars, for vehicles purchased from Pauley Motor. (*See* Pettigrew Depo. 163:6-11, ECF 77.) Contrastingly, Pettigrew, on average, purchased vehicles for 0.5% *under* the NADA value from all other sellers during the same time period. (*See* Pettigrew Depo. 165:3-11.)

Ultimately, Pettigrew's employment was terminated on July 5, 2016. (Pettigrew Depo. at 152:3-12, ECF 76.) At the time, DriveTime was investigating Pettigrew's conduct and the information provided to it that Pettigrew was accepting kickbacks from Pauley Motor. During the course of this investigation, Pettigrew left his GPS-equipped company vehicle at an auction and drove a vehicle purchased at the auction for approximately two weeks.

3

On November 22, 2016, DriveTime sent Mr. Pauley, as the managing member of Pauley Motor, a litigation hold letter (the "Litigation Hold Letter")[1] notifying him of the potential for future litigation relating to Pauley Motor's dealings with Pettigrew. It further demanded that Pauley Motor preserve all documents—*including text messages*—concerning Pettigrew. (*See* Exhibit 2.) A few months later, DriveTime filed the Complaint in this matter commencing litigation against Pettigrew and Pauley Motor for the kickback scheme. (*See generally* Complaint, ECF 1.)

On March 5, 2018, Pauley Motor responded to DriveTime's First Set of Interrogatories and Request for Production of Documents ("Initial Discovery Responses"). Mr. Pauley verified the accuracy of the Initial Discovery Responses. (*See* Exhibit 1 at 6.) Therein, Pauley Motor stated that "[n]o evidence ha[d] been destroyed" after it received the Litigation Hold Letter. (Exhibit 1 at 2.) It further stated that no communications existed between any Pauley Motor employee, agent, or representative and Pettigrew. (Exhibit 1 at 3.)

During his August 29, 2018 deposition, however, Mr. Pauley changed his story. He admitted that he had text messages with Pettigrew on his phone. (Pauley Depo. 59:17-19, ECF 93.) ("Q: Okay. Do you currently have text messages from Mr. Pettigrew? A: Yes.").) He further indicated that he does not have any text messages with Pettigrew "from the past" because he has a "different phone." (Pauley Depo. 72:9-13, ECF 93.) Significantly, Mr. Pauley also admitted that aside from speaking with an attorney, he took absolutely no steps to preserve any relevant information after receiving the Litigation Hold Letter. (*Id.* 60:7-12.) An oral request for all text messages between Pettigrew and Pauley Motor[2] was subsequently made during the

---

[1] A true and accurate copy of the Litigation Hold Letter is attached hereto as Exhibit 2.
[2] Unless otherwise specified herein, Pauley Motor's text message communications include those sent or received by Mr. Pauley, Raj Patel, and Niral Patel.

4

deposition, although the same were previously requested in Plaintiff's First Request for Production. (*Id.* 159:25-160:1.)

On November 13, 2018, Pauley Motor supplemented its initial responses to DriveTime's discovery requests.[3] In its supplemental discovery responses, Pauley Motor admitted that "Bruce Pauley exchanged text messages with Pettigrew. Pettigrew is producing any such messages that were exchanged prior to [DriveTime's] initiation of this proceeding." (Exhibit 3 at 3.) Pettigrew produced no text messages. About the same time, Pauley Motor's counsel represented to the undersigned during a telephonic conversation that Niral Patel—a Pauley Motor employee—was in possession of at least one text message exchange with Pettigrew. Niral Patel asked Pettigrew where he was, to which he replied: "in the bathroom."[4] While this admission might seem trivial, it is not. The restroom of the CFAA is where Pettigrew met with Mr. Pauley to receive the cash kickbacks. (*See* Tyler Depo. 59:1-4, ECF 84.)

Due in large part to the conflicting evidence regarding Pauley Motor's communications with Pettigrew, the Court issued an Order on November 16, 2018. (*See* Order, ECF 58.) Pauley Motor was directed to "provide a declaration from an authorized corporate representative" providing an explanation as to what steps Pauley Motor took to locate communications with Pettigrew and an explanation regarding the discrepancies between its discovery responses and Mr. Pauley's deposition testimony. (*Id.*) Pauley Motor was given until December 6, 2018 to complete the declaration. (*Id.*)

Despite the Court's November 16, 2018 Order, Pauley Motor waited until December 19, 2018 to file its declaration. (*See generally* Pauley Declaration, ECF 66.) In it, Mr. Pauley

---

[3] A true and accurate copy of Pauley Motor's November 13, 2018 supplemental responses to DriveTime's First Set of Interrogatories and Request for Production of Documents is attached hereto as Exhibit 3.
[4] The undersigned memorialized that telephonic conversation in a January 4, 2019 correspondence. A true and accurate copy of that correspondence is attached hereto as Exhibit 4.

5

attempted to explain the inconsistent discovery responses with his Declaration filed with the Court. (*See generally* Pauley Declaration, ECF 66.) Mr. Pauley claimed that, initially, he "did not recall that there were text messages between Pauley Motor employees and Bryan Pettigrew." (Pauley Declaration ¶ 2, ECF 66.) He further attempted to justify his discovery misconduct by stating "any texts between Bryan Pettigrew and me (Bruce Pauley) for the time period prior to the initiation of this proceeding were already being produced by Bryan Pettigrew." (Pauley Declaration ¶ 10, ECF 66.)

To date, DriveTime has not received any text messages between Pettigrew and Pauley Motor employees or agents from Pauley Motor, Pettigrew, or anyone else. Pauley Motor's actions clearly demonstrate it has no intention of producing any text messages which were almost certainly destroyed after Mr. Pauley received the Litigation Hold Letter. Its efforts to push its discovery obligations onto Pettigrew does not somehow absolve Pauley Motor of its discovery shortcomings. That is especially true considering Pettigrew previously stated his phone was stolen in August 2016 and provided an incident report indicating the same. (*See* Pettigrew Incident Report.)[5] It is truly perplexing that Mr. Pauley has twice stated under oath that Pettigrew would be producing text messages when that clearly will never happen. DriveTime will now never know the true extent of Pauley Motor's communications with Pettigrew. Because no one bothered to preserve the communications at issue—despite the Litigation Hold Letter—DriveTime can only wonder as to the extent to which the cash kickback scheme and any other misconduct were memorialized in those communications.

At this point, the only conclusions that can be drawn are that Pauley Motor (1) failed to do anything after receiving the Litigation Hold Letter; (2) spoliated all of the critical text messages that were in its possession; and, (3) misled Plaintiff for months as to the truth

---

[5] The August 2016 Pettigrew Incident Report produced in this litigation is attached hereto as Exhibit 5.

concerning the existence and content of the text messages. Pauley Motor is now attempting to pass on its discovery obligations to Pettigrew. But finger-pointing to another defendant who was also engaged in the kick-back scheme and who similarly failed to produce records will not absolve Pauley Motor of its discovery abuses. Accordingly, DriveTime respectfully requests that this Court issue an Order sanctioning Pauley Motor with a mandatory adverse inference with regard to the text messages that were not produced nor preserved as well as an award of attorneys' fees to DriveTime for having to prosecute this Motion.

**II.     LAW AND ARGUMENT**

The recently-amended Fed. R. Civ. P. 37(e) governs when a litigant fails to preserve electronically stored information ("ESI"), and that Rule provides as follows:

> **(e) Failure to Preserve Electronically Stored Information.** If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> **(1)** upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> **(2)** only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
> **(A)** presume that the lost information was unfavorable to the party;
>
> **(B)** instruct the jury that it may or must presume the information was unfavorable to the party; or
>
> **(C)** dismiss the action or enter a default judgment.

Courts that have addressed Rule 37(e) recognize that it involves a multi-step analysis. *EPAC Tech. v. Harpercollins Christian Publishing, Inc.*, No. 3:12-cv-00463, 2019 WL 109371,

7

*13 (M.D. Tenn. Jan. 4, 2019).[6]  First, there must be a duty in place to preserve the ESI in question.  *Id.*  Next, it must be determined if the offending party took reasonable steps to preserve the ESI and if the information is available from another source.  *Id.*  If there was a duty in place and reasonable steps were not taken, courts must consider the prejudice that would be suffered as a result of the destroyed ESI.  *Id.*  Finally, to warrant an adverse inference sanction, it must be determined that the offending party acted with the intent "to deprive another party of the information's use in the litigation."  Fed. R. Civ. P. 37(e)(2).  It should also be noted that prejudice does not need to be established if there is a showing of an intent to deprive the other party of information because the prejudice is inferred.  *O'Berry v. Turner*, Nos. 7:15-CV-64-HL, 7:15-CV-75-HL, 2016 WL 1700403, * 4 (M.D. Ga. April 27, 2016).

Here, Pauley Motor was under a duty to preserve ESI related to Pettigrew no later than the day it received the Litigation Hold Letter.  Pauley Motor took no steps to preserve any ESI, which is no longer available from any other source.  Consequently, DriveTime is now suffering significant prejudice in prosecuting its case because of Pauley Motor's actions, which were taken with the intent to deprive DriveTime of the crucial text messages with Pettigrew.  As such, a mandatory adverse inference sanction against Pauley Motor is justified and warranted with regard to the destroyed text messages.

      **A.**    **Pauley Motor Had A Duty To Preserve ESI, Including Text Messages, Concerning Its Communications With Pettigrew.**

"[A] party to civil litigation has a duty to preserve relevant information, including ESI, when that party has notice that the evidence is relevant to litigation or … should have known that the evidence may be relevant to future litigation."  *EPAC Tech.*, 2019 WL 109371 at *13 (quoting *John B. v. Goetz*, 531 F.3d 448, 459 (6th Cir. 2008)).  "In essence, the duty to preserve

---

[6] There is limited case law from this Court or the Sixth Circuit analyzing the recent amendments to Rule 37(e), which is why case law from other jurisdictions is referenced and discussed herein.

evidence extends to those employees likely to have relevant information—the key players in the case[.]" *Alabama Aircraft Indus., Inc. v. Boeing Company*, 319 F.R.D. 730, 740-41 (N.D. Ala. 2017)  Significantly, receipt of a litigation hold letter apprising an individual of potential litigation triggers a duty to preserve ESI. *See HLV, LLC v. Page & Stewart*, No. 1:13-cv-1366, 2018 WL 2197730. *3 (W.D. Mich. Mar. 2, 2018).

Here, Pauley Motor received the Litigation Hold Letter no later than November 26, 2016. (*See* Pauley Depo. 60:7-12, ECF 93.)  As such, Pauley Motor's duty to preserve arose on November 26, 2016 at the latest, which included a duty to preserve information in the possession of its employees likely to have relevant information. *See Alabama Aircraft Indus., Inc.*, 319 F.R.D. at 740-41.

Moreover, there is reason to believe that Pauley Motor should have known that there may be future litigation regarding its interactions with Pettigrew as early as July 6, 2016.  Mr. Pauley received a text message from Pettigrew on July 6, 2016—the day after Pettigrew was terminated by DriveTime and confronted about his dealings with Pauley Motor.  (*See* Pauley Depo. at 61:8-16, ECF 93; Pettigrew Depo. 152:3-153:3, ECF 76.)  Accordingly, Pauley Motor's duty to preserve ESI may have arisen much earlier than November 2016, but it is beyond dispute that Pauley Motor had such a duty to preserve ESI related to Pettigrew.

> **B.  Pauley Motor Failed To Take Any Steps To Preserve Its ESI In Response To The Litigation Hold Letter, And The Destroyed Communications Cannot Be Recovered From Another Source.**

Mr. Pauley readily admitted that he did nothing to preserve any potential evidence upon receipt of the Litigation Hold Letter.  (Pauley Depo. 60:7-12, ECF 93 ("Q:  Other than discussions with counsel after receiving [the Litigation Hold Letter] on November 26, 2016, do you recall undertaking any action to preserve any evidence related to the claims or defenses in

9

this matter? A: No.").) Moreover, his evolving discovery responses and representations under oath indicate that he did not even ask any other Pauley Motor employees if they had text messages with Pettigrew until roughly two years after receiving the Litigation Hold Letter. (*Compare* Exhibit 1 stating no text message exist with Exhibit 3 at 3 (verifying in ***November 2018*** that Bruce Pauley was the only Pauley Motor "employee, agent, or representative" that exchanged text messages with Pettigrew), *with* Pauley Declaration ¶ 8, ECF 66 (declaring in ***December 2018*** for the first time that Pauley Motor employee Niral Patel possessed text message communications with Pettigrew).) It is clear that Pauley Motor did nothing for two years after its duty to preserve ESI arose. In fact, Mr. Pauley now has a new phone which precludes DriveTime from conducting a forensic analysis of the device for communications that Mr. Pauley admittedly sent to Pettigrew. (*See* Pauley Depo. 72:9-13. ECF 93.) Accordingly, Pauley Motor failed to take reasonable steps to preserve any ESI—and its text messages with Pettigrew in particular—after receiving the Litigation Hold Letter.

Furthermore, the text messages and other communications that Pauley Motor caused to be destroyed are not available from other sources. In his Declaration, Mr. Pauley stated that his cell phone carrier no longer has any information dating back to 2016 due to its retention policy. (Pauley Declaration ¶ 9, ECF 66.) Contrary to Pauley Motor's baseless and self-serving suggestions, Pettigrew is not producing any of the text messages that Pauley Motor failed to preserve because his cell phone was purportedly stolen in August 2016. (*See* Exhibit 5.) It is evident that there are no longer any other sources that can produce the communications between Pauley Motor and Pettigrew from the relevant time period.

Accordingly, Pauley Motor failed to take proper steps to preserve relevant ESI, and that information cannot be obtained from another source.

**C.    The Destroyed Text Messages Between Pettigrew And Pauley Motor Are Highly Prejudicial to DriveTime's Claims and Support the Claims.**

As previously noted, DriveTime does not need to establish prejudice if it demonstrates an intent to deprive the other party of information because the prejudice is inferred. *O'Berry v. Turner*, Nos. 7:15-CV-64-HL, 7:15-CV-75-HL, 2016 WL 1700403, * 4 (M.D. Ga. April 27, 2016) ("Unlike subsection (e)(1), subsection (e)(2) does not require a finding that the opposing party was prejudiced by the failure to preserve the electronically stored data. Prejudice is inferred by the court's finding of intent." (Citation omitted).). Furthermore, "Rule 37(e) does not explicitly place the burden of proving or disproving prejudice on either party, and the Court is given great discretion in assessing prejudice." *Schmalz v. Village of North Riverside*, No. 13 C 8012, 2018 WL 1704109, *3 (N.D. Ill. Mar. 23, 2018)  Regardless, it is beyond dispute that DriveTime suffered substantial prejudice because of Pauley Motor's actions that caused all communications between it and Pettigrew to be destroyed.

"A party has the right to prosecute its case in the way it deems fit based on all available evidence." *Schmalz v. Village of North Riverside*, No. 13 C 8012, 2018 WL 1704109, *4 (N.D. Ill. Mar. 23, 2018) (quoting *Larson v. Bank One Corp.*, No. 00 C 2100, 2005 WL 4652509, *14 (N.D. Ill. Aug. 18, 2005)). That means the prejudice stemming from destroyed communications cannot be overcome by simply deposing those involved in the communications. *Id.* Indeed, courts recognize the prejudice parties suffer as a result of lost or destroyed text messages:

> The content of text messages cannot be replaced simply by eliciting testimony from Defendants, and by having Plaintiff accept that testimony rather than relying on the actual messages to use as they deem fit. Without the lost text messages, Plaintiff is deprived of the opportunity to know the precise nature and frequency of those private communications, which occurred during a critical time period. Accordingly, the Court finds that Plaintiff has suffered prejudice as a result of the spoliation of highly relevant text messages.

11

*Id.* (citations and quotations omitted).

Here, Pauley Motor deprived DriveTime of the opportunity to review and utilize the text messages between Pettigrew and Pauley Motor as it deems fit.  *See Schmalz*, 2018 WL 1704109, at *4.  Specifically, as a result of Pauley Motor's discovery misdeeds, DriveTime will never know "the precise nature and frequency of those private communications" and was denied the opportunity to use the destroyed text messages during important depositions in this case—such as Mr. Pauley's deposition.  *Id.*  The resulting prejudice is particularly significant here considering what we do know about the text messages supports DriveTime's claims: (1) one purported text message shows an exchange between the defendants about being located in the bathroom – the precise location DriveTime understands the exchange of cash between them took place; and (2) another purported text message between the defendants immediately followed Pettigrew's termination by DriveTime.  Other than these scant details, Pauley Motor has failed to provide any information regarding those communications to date.  (*See* Pauley Declaration ¶¶ 2-3, ECF 66.)

Accordingly, prejudice befell DriveTime as a result of Pauley Motor's actions, and sanctions are warranted, at the very least, pursuant to Fed. R. Civ. P. 37(e)(1).  DriveTime respectfully submits that this Court award it attorneys' fees associated with prosecuting this Motion as well as any other relief this Court deems appropriate.

> **D.  Pauley Motor's Actions Evidence Bad Faith And Demonstrate Its Intent To Deprive DriveTime Of Any Text Messages With Pettigrew.**

Courts routinely recognize that demonstrating information was destroyed in bad faith satisfies the intent to deprive the opposing party of the information requirement of Rule 37(e)(2).  *See Schmalz*, 2018 WL 1704109, at *5; *see also Alabama Aircraft Indus., Inc.*, 319 F.R.D. at 746.  While failing to take any steps to preserve ESI, without more, may not rise to the level of

12

bad faith, it certainly considered as part of a bad faith analysis. *See Schmalz*, 2018 WL 1704109, at \*5. In fact, courts across the country have found that failing to preserve ESI coupled with "additional factors" establishes the degree of bad faith necessary to impose sanctions under Rule 37(e)(2). *See id.* (discussing cases). A bad faith analysis is inherently fact-intensive and considers the totality of the circumstances in reaching a conclusion. *See, e.g.*, *O'Berry v. Turner*, 2016 WL 1700403, \* 4 (analyzing several factors before holding that a litigant acted with the intent to deprive the opposing party information).

Here, Pauley Motor failed to take any steps to preserve its text message communications with Pettigrew upon receipt of the Litigation Hold Letter. (Pauley Depo. 60:7-12, ECF 93.) First, Pauley Motor affirmatively and falsely represented under oath that no communications existed between it and Pettigrew, which can only be considered an effort to mislead DriveTime regarding those communications. (*See* Exhibit 1 at 3.) Thereafter, Mr. Pauley himself obtained a new cell phone, effectively guaranteeing that no information from his prior phone could ever be accessed by DriveTime. (*See* Pauley Depo. 72:9-13, ECF 93.) Pauley Motor also did not even reach out to two of its employees that were likely to have relevant text messages until sometime after November 13, 2018—roughly two years after receiving the Litigation Hold Letter. (*Compare* Exhibit 3 at 3, *with* Pauley Declaration ¶ 8, ECF 66.) Those employees were not contacted regarding their communications with Pettigrew until *after* Pauley Motor received and responded to DriveTime's initial discovery requests, *after* Mr. Pauley was deposed, *after* this Court's September 4, 2018 discovery Order, *after* Pauley Motor provided DriveTime with supplemental discovery responses, and *after* the close of discovery. It is now clear that Mr. Pauley himself and at least one Pauley Motor employee had relevant text messages that were not

preserved.  Rather than complying with its discovery obligations, Pauley Motor seems to have taken affirmative steps to ensure those text messages would never be produced in this litigation.

In short, Pauley Motor's actions since receiving the Litigation Hold Letter evidence bad faith and an intent to deprive DriveTime of communications critical to the claims asserted in this matter.  *See Schmalz*, 2018 WL 1704109, *5 (recognizing "irresponsible and shiftless behavior" or a party undertaking "extraordinary measures to mislead opposing counsel" sufficiently evidence bad faith).  Accordingly, Rule 37(e)(2) sanctions are warranted here to "level[] the playing field and punish[] the wrongdoer by placing the risk of an erroneous judgment on the party that wrongfully created the risk."  *See Crown Battery Manufacturing Co. v. Club Car, Inc.*, 185 F.Supp.3d 987, 995 (N.D. Ohio 2016).

> E. The Appropriate Sanction Is A Mandatory Adverse Inference Regarding The Destroyed Text Messages Between Pauley Motor and Pettigrew.

A mandatory adverse inference against Pauley Motor is the discovery sanction warranted here.  Pauley Motor's actions throughout these proceedings evidence a complete disregard for the judicial process and its duties related to the same.  Indeed, its cavalier attitude is evident from Pauley Motor's constantly changing representations regarding its communications with Pettigrew, and its utter failure to do anything to preserve the same.  The only excuse offered was that Mr. Pauley "did not recall that there were text messages between Pauley Motors employees and Bryan Pettigrew." (Pauley Declaration, ECF 66, ¶ 2.)  Even as of November 13, 2018, however, Pauley signed a verification accompanying the supplemental discovery responses stating that he was the only Pauley Motor employee to communicate via text with Pettigrew.  Regardless, Pauley Motor's shifting responses and Pauley's Declaration clearly establish it thwarted its discovery obligations, made no effort to determine if responsive documents existed, and made no effort to preserve, much less produce, relevant information.

Because of Pauley Motor's actions, DriveTime is deprived of key text message communications that everyone acknowledges existed. Unless this Court intervenes, DriveTime will be forced to accept the testimony of a man who already (1) falsely represented under oath that no text messages existed, then falsely represented under oath that Mr. Pauley was the only Pauley Motor representative to have text messages (when it later turned out that at least one other Pauley Motor employee – and maybe more – had relevant text messages); (2) returned his cell phone from the relevant time period to his provider, (3) testified in large part that he does not recall any specifics from the relevant time period, (4) has steadfastly refused to produce any text messages, and (5) has repeatedly—and falsely—stated that text messages will be produced by another party to this lawsuit. This case should not rise and fall based on the testimony of a witness who keeps changing his story and lacks credibility.

Indeed, if Pauley Motor is permitted to get away with its discovery misconduct, it would set a dangerous precedent that this Court condones gamesmanship during the discovery process. Parties would be free to allow important evidence to be destroyed while at the same time misrepresenting that the evidence does not exist with little fear of the consequences. If an adverse inference sanction is not imposed, litigants may be encouraged to take their chances by destroying particularly damaging evidence in hopes that the opposing party is unable to prove the requisite level of intent. Discovery Sanctions are meant to deter future wrongdoings—not encourage gamesmanship. *See Brown v. Tellermate Holdings Ltd.*, No. 2:11-cv-1122, 2014 WL 2987051, *25 (S.D. Ohio July 1, 2014) (recognizing that discovery sanctions, in part, are meant "to deter other similarly situated litigants" from engaging in similar misconduct).

Accordingly, a mandatory adverse inference is warranted under Rule 37(e)(2) because of Pauley Motor's inexplicable discovery conduct and to deter litigants from engaging in similar

15

behavior in the future. Specifically, the inference should be drawn that text messages between Pauley Motor and Pettigrew support DriveTime's claims that Pettigrew accepted kickbacks from Pauley Motor.

### III. CONCLUSION

Accordingly, DriveTime respectfully requests this Court enter sanctions against Pauley Motor for its discovery misdeeds in the form of a mandatory adverse inference regarding the destroyed text messages, an award of attorneys' fees for having to prosecute this Motion, and any other relief this Court deems appropriate.

Respectfully submitted,

/s/ Jonathan R. Secrest
Jonathan R. Secrest (0075445)
David A. Lockshaw, Jr. (0082403)
DICKINSON WRIGHT PLLC
150 East Gay Street, Suite 2400
Columbus, Ohio 43215
Telephone (614) 744-2945
Facsimile (844) 670-6009
jsecrest@dickinsonwright.com
dlockshaw@dickinsonwright.com
*Counsel for Plaintiff*

### CERTIFICATE OF ATTEMPTS TO MEET AND CONFER

DriveTime's counsel sent a letter to Pauley Motor's counsel on January 4, 2019 regarding the issues discussed herein that demanded production of the text messages at issue, a copy of which is attached hereto as Exhibit 4. Pauley Motor's response, which is attached hereto as Exhibit 6, rejected DriveTime's efforts to resolve this dispute without judicial intervention.

/s/ Jonathan R. Secrest
Jonathan R. Secrest (0075445)

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 31st day of January 2019 a true and correct copy of the foregoing was filed electronically with the Court's CM/ECF system, and that notice of this filing was sent by electronic mail to all parties by operation of the Court's electronic filing system.

/s/ Jonathan R. Secrest
Jonathan R. Secrest (0075445)

COLUMBUS 65716-6 107499v1