# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

DRIVETIME CAR SALES COMPANY, LLC,

    Plaintiff,

v.

    Case No.: 2:17-cv-371
    JUDGE GEORGE C. SMITH
    Magistrate Judge Vascura

BRYAN PETTIGREW, *et al.*,

    Defendants.

## OPINION AND ORDER

This matter is before the Court upon Defendant Pauley Motor Car Co. Preowned Vehicles, LLC's Motion for Summary Judgment ("Pauley Motor's Motion") (Doc. 78), Defendant Bryan Pettigrew's Motion for Summary Judgment ("Pettigrew's Motion") (Doc. 85), and Plaintiff DriveTime Car Sales Company, LLC's Motion for Spoliation Sanctions ("DriveTime's Motion") (Doc. 94). The motions are fully briefed and ripe for disposition. For the following reasons, Pauley Motor's and Pettigrew's Motions are **DENIED** and DriveTime's Motion is **GRANTED IN PART and DENIED IN PART**.

### I. BACKGROUND

Plaintiff DriveTime Car Sales Company, LLC ("DriveTime"), a citizen of Arizona, is a used vehicle retailer who acquires its vehicles primarily from used vehicle auctions around the country. (Doc. 12, Am. Compl. ¶ 11). Defendant Bryan Pettigrew, a citizen of Ohio, is a former employee of DriveTime, who was responsible for purchasing vehicles on DriveTime's behalf. (Doc. 77, Pettigrew Dep. at 53).

DriveTime's buyers, like Pettigrew, were provided with a buying guide that contained maximum purchase prices for different models, makes, and years. (*Id.* at 63; Doc. 84, Tyler Dep. at 21). DriveTime's buyers also used industry standard pricing information from the National Automotive Dealers Association ("NADA") when evaluating used cars for purchase. (Doc. 100-1, Sarchett Dec. ¶ 4). There is conflicting evidence as to whether buyers were permitted to exercise discretion to purchase vehicles above the maximum prices in the buying guides. (Doc. 80, Sarchett Dep. at 44–46, 216).

Much of Pettigrew's buying activity for DriveTime occurred at the Columbus Fair Auto Auction (the "Auction"). Sellers bring their cars to the Auction, where buyers like Pettigrew bid on and purchase them. The parties dispute whether the purchase contract for each vehicle is entered into with the Auction, as consignee, or directly with the vehicle sellers. (Doc. 78, Pauley Motor's Reply at 2; Doc. 100, DriveTime's Resp. at 22–23; Doc. 100-1, Sarchett Dec. ¶ 14).

During the period of January through June 2016, Pettigrew purchased at the Auction what DriveTime contends was an unusually large number of vehicles from Defendant Pauley Motor, and those vehicles were purchased at what DriveTime contends were above-market rates. DriveTime had available to it the buying guide and NADA pricing information for all vehicles purchased by Pettigrew, as well as the prices he agreed to for each vehicle, as each purchase was made. (Doc. 77, Pettigrew Dep. at 118–20). In March 2016, Pettigrew's supervisor spoke with him regarding the high volume and prices for vehicles he purchased from Pauley Motor. (Doc. 80, Sarchett Dep. at 96–97; Doc. 77, Pettigrew Dep. at 127).

In June 2016, DriveTime received a report from another of its buyers, Mitch Tyler. Tyler reported that he had been told by Shawn Stratton, another car dealer who sold vehicles at the Auction, that Stratton witnessed Bruce Pauley, of Pauley Motor, giving Pettigrew "a bunch of

2

hundreds in the restroom . . . ." (Doc. 84, Tyler Dep. at 58–59). However, Tyler is adamant that "[t]he only stuff I knew is what I was told about. And I never witnessed anything, I never saw anything. Nothing. I was told it by another buyer/seller that he witnessed Bryan taking money from Bruce. I never witnessed anything, I never saw it. So really, it's hearsay. That's all I know." (*Id.* at 57). More importantly, when Stratton was deposed, he categorically denied Tyler's report:

> Q: At any time, have you ever told Mitchell Tyler that you have seen, personally observed, Bryan Pettigrew take cash from anyone?
>
> A: Okay. So, I'm going to answer the question as I don't recall that conversation. I've never seen Bryan Pettigrew take any money from Bruce Pauley or any of the Pauley associates.
>
> Q: Have you seen him take money from anyone?
>
> A: I have not.

(Doc. 65, Stratton Dep. at 48).

However, prior to Stratton's deposition, DriveTime was prompted by Tyler's report to look more closely at Pettigrew's buying patterns. DriveTime's analysis revealed that Pettigrew paid noticeably more for Pauley Motor vehicles (on average 106.75% of NADA value) than he did for vehicles purchased from other sellers (99.53%). (Doc. 100, Resp. at 7; Doc. 100, Sarchett Dec. ¶¶ 3–7; Doc. 100-2, Vehicle Purchase Records). Additionally, Pettigrew paid noticeably more for Pauley Motor vehicles (106.75%) than did Tyler when he purchased vehicles from Pauley Motor (98.71%). Finally, during discovery, Pettigrew's bank records showed that on at least five occasions, he made cash deposits of at least $1,000 within 24 hours of making a purchase from Pauley Motor. (Doc. 100, Resp. at 8; Doc. 104, Bank Records; Doc. 100-2, Vehicle Purchase Records).

DriveTime also learned that Pauley Motor regularly offered a $100 Visa gift card to the successful bidder for each of its vehicles sold at the Auction. (Doc. 84, Tyler Dep. at 69–70).

3

Pettigrew had never forwarded the gift cards offered for the vehicles he purchased from Pauley Motor, despite an alleged DriveTime policy requiring buyers to accept any gift cards or other valuable property offered to them and to forward the items to DriveTime's home office. (Doc. 84, Tyler Dep. at 71–73; Doc. 80, Sarchett Dep. at 108). Pettigrew disputes that such a policy was in place.

On the basis of Tyler's report,[1] Pettigrew's buying patterns, and Pettigrew's failure to turn over the gift cards, DriveTime commenced this action on May 1, 2017. DriveTime's Amended Complaint alleged that Pettigrew and Pauley Motor entered into a kickback scheme whereby Pauley Motor would provide Pettigrew with cash payments in exchange for his agreement to higher purchase prices for Pauley Motor vehicles. (Doc. 12, Am. Compl.). DriveTime also sought recovery for the value of the gift cards Pettigrew failed to turn over. (*Id.*). After certain claims were dismissed on Pauley Motor's motion for judgment on the pleadings (Doc. 27, Opinion and Order), DriveTime asserts the following remaining claims: (1) theft of the gift cards, under Ohio Revised Code § 2703.61, against Pettigrew; (2) conversion of the gift cards, against Pettigrew; (3) fraud, against Pettigrew; (4) breach of the duty of good faith and loyalty, against Pettigrew; and (5) unjust enrichment, against Pauley Motor. Defendants now move for summary judgment on all remaining claims against them. (Docs. 78, 85).

DriveTime has also filed a motion for spoliation sanctions against Pauley Motor. (Doc. 94). During discovery, Pauley Motor first stated in its interrogatory responses that no text messages between Pauley Motor representatives and Pettigrew exist; however, in his deposition

---

[1] Tyler is correct that his report to DriveTime is hearsay, and although it may be admissible to show the effect on the listener (*e.g.*, to demonstrate why DriveTime began to take a closer look at Pettigrew's buying activities at the Auction), it is inadmissible to prove the truth of the statement (*e.g.*, that Pettigrew did, in fact, accept cash from Pauley Motor). *See* Fed. R. Evid. 801–802 (hearsay statements not admissible to prove the truth of the matter asserted); *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 379 (6th Cir. 2009) (statements offered to show their effect on the listener are not hearsay). The Court will therefore disregard Tyler's report in considering whether DriveTime has offered sufficient evidence of cash payments from Pauley Motor to Pettigrew.

4

as Pauley Motor's representative under Fed. R. Civ. P. 30(b)(6), Bruce Pauley stated that he had exchanged text messages with Pettigrew. (Doc. 94-1, Pauley Motor's Interrog. Resps.; Doc. 96, Pauley Dep. at 59). Bruce Pauley was ultimately unable to produce the content of the text messages because he had obtained a new phone and had not preserved the contents of his previous phone, despite being put on notice to do so in November of 2016 by a litigation hold letter issued by DriveTime's counsel. (Doc. 96, Pauley Dep. at 72; Doc. 94-2, Litigation Hold Letter). DriveTime asks that, as a sanction for Pauley Motor's failure to take reasonable steps to preserve the text messages, the Court impose a mandatory adverse inference that the content of the text messages was unfavorable to Pauley Motor.

## II. DRIVETIME'S MOTION FOR SPOLIATION SANCTIONS

The Court turns first to DriveTime's motion for spoliation sanctions because its requested remedy—a mandatory adverse inference that the missing text messages were unfavorable to Pauley Motor—could affect the evidence the Court will consider in deciding the Defendants' motions for summary judgment.

Prior to the Federal Rule of Civil Procedure amendments of 2015, the standard in the Sixth Circuit was that a party seeking spoliation sanctions must establish: "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claims or defenses such that a reasonable trier of fact could find that it would support that claim or defense." *Beaven v. U.S. Dep't of Justice,* 622 F.3d 540, 553 (6th Cir. 2010) (internal quotation marks omitted). However, effective December 1, 2015, Federal Rule of Civil Procedure 37(e) was amended to include the following:

> **(e) Failure to Preserve Electronically Stored Information.** If electronically stored information that should have been preserved in the anticipation or conduct

of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:

> **(1)** upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> **(2)** only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
>> **(A)** presume that the lost information was unfavorable to the party;
>>
>> **(B)** instruct the jury that it may or must presume the information was unfavorable to the party; or
>>
>> **(C)** dismiss the action or enter a default judgment.

Although the amended rule clearly supplants certain aspects of the Sixth Circuit's standard, courts within the Sixth Circuit have continued to apply *Beavin* and amended Rule 37(e) in concert where they do not conflict. *E.g.*, *M.F. v. Perry Cty. Children & Family Servs.*, No. 2:15-CV-2731, 2017 WL 6508573, at *9 (S.D. Ohio Sept. 13, 2017) (Watson, J.), *aff'd*, 725 F. App'x 400 (6th Cir. 2018); *Nancy J. Brown, Plaintiff, v. Duke Energy Corp.*, No. 1:13CV869, 2019 WL 1439402, at *5 (S.D. Ohio Mar. 31, 2019) (Barrett, J.). In particular, *Beavin*'s requirement that there be an obligation to preserve at the time of destruction, and that the destroyed evidence must have been relevant to the claims or defenses of the party seeking sanctions, are left intact by amended Rule 37(e).

However, the *Beavin* standard's "culpable state of mind" no longer applies to less severe sanctions under Rule 37(e)(1); instead, the party seeking sanctions under Rule 37(e)(1) must only demonstrate prejudice. *Yoe v. Crescent Sock Co.*, No. 1:15-CV-3-SKL, 2017 WL 5479932, at *11 (E.D. Tenn. Nov. 14, 2017). On the other hand, to obtain the more severe sanctions available under Rule 37(e)(2), the party seeking sanctions must establish that the opposing party "acted with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2). "A showing of negligence or even gross negligence," which would have sufficed as a

6

culpable state of mind under *Beavin*, "will not do the trick." *Applebaum v. Target Corp.*, 831 F.3d 740, 745 (6th Cir. 2016).

Here, Pauley Motor does not dispute that it had an obligation to preserve text messages between its representatives and Pettigrew or that it failed to take reasonable steps to preserve them. (*See generally* Doc. 106, Resp.). DriveTime has also established that the text messages cannot be restored or replaced through additional discovery, because neither Pettigrew nor the wireless carriers for Pauley Motor's representatives have access to them either.[2] (Doc. 94, DriveTime's Mot. at 6; Doc. 66, Pauley Dec. ¶¶ 8–9). Thus, in order to obtain the mandatory adverse inference it seeks under Rule 37(e)(2), the only additional requirement under the Rule is that Pauley Motor acted with the intent to deprive DriveTime of the text messages' use in the litigation when it failed to preserve them.

The Court finds that DriveTime has not sufficiently demonstrated that Pauley Motor acted with the requisite intent. "Rule 37(e)(2)'s intent standard is stringent and does not parallel other discovery standards." *Culhane v. Wal-Mart Supercenter*, No. 2:17-CV-13061, ___ F. Supp. 3d ___, 2019 WL 1097488, at *3 (E.D. Mich. Jan. 10, 2019) (quoting *Moody v. CSX Transportation, Inc.*, 271 F. Supp. 3d 410, 431 (W.D.N.Y. 2017) and *Jenkins v. Woody*, 2017 WL 362475, *17 (E.D. Va. 2017)) (internal quotation marks omitted). As noted by the Advisory Committee in connection with the December 2015 amendments to Rule 37,

> [A] party's intentional loss or destruction of evidence to prevent its use in litigation gives rise to a reasonable inference that the evidence was unfavorable to the party responsible for loss or destruction of the evidence. Negligent or even grossly negligent behavior does not logically support that inference. Information lost through negligence may have been favorable to either party, including the party that lost it, and inferring that it was unfavorable to that party may tip the balance at trial in ways the lost information never would have.

---

[2] Pettigrew reported his phone stolen in August 2016, and DriveTime does not argue that Pettigrew failed to take reasonable steps to comply with his preservation obligations. (Doc. 94, Resp. at 6).

Rule 37, Advisory Committee Notes, 2015 Amendment. Accordingly, the Advisory Committee's intent was "to limit the most severe measures [to cure prejudice caused by the loss of electronically stored information] to instances of intentional loss or destruction." *Id.* These concerns apply equally to "the court's authority to presume or infer that the lost information was unfavorable to the party who lost it when ruling on a pretrial motion or presiding at a bench trial." *Id.* Therefore, the Court's analysis is not altered by the case's summary judgment posture.

Although Bruce Pauley failed to take reasonable steps to preserve the text messages when he switched to a different phone (Doc. 96, Pauley Dep. at 72), there is no evidence that he did so intentionally beyond DriveTime's speculation. This is not sufficient to impose a mandatory adverse inference under Rule 37(e)(2). *See Yoe v. Crescent Sock Co.*, No. 1:15-CV-3-SKL, 2017 WL 5479932, at *14 (E.D. Tenn. Nov. 14, 2017) (even where corporate plaintiff's data was destroyed intentionally, Rule 37(e)(2) sanctions were not warranted where the individual responsible destroyed it due to concerns that the defendant would commence a separate legal action against him personally, and not to deprive the defendant of its use in the current litigation); *EPAC Techs., Inc. v. HarperCollins Christian Publ'g, Inc.*, No. 3:12-CV-00463, 2018 WL 1542040, at *18 (M.D. Tenn. Mar. 29, 2018) (Rule 37(e)(2) sanctions not warranted even though the responsible party "failed to take its preservation obligations seriously" and made only "halfhearted attempts ... to impose a litigation hold that was not implemented with sufficient guidance or monitored by counsel.").

However, less severe sanctions are available to DriveTime under Rule 37(e)(1) upon a finding of prejudice. The Advisory Committee notes make clear that "[t]he rule does not place a burden of proving or disproving prejudice on one party or another." Rule 37, Advisory Committee Notes, 2015 Amendment. In certain cases, such as when "the content of the lost information may

8

be fairly evident, the information may appear to be unimportant, or the abundance of preserved information may appear sufficient to meet the needs of all parties," it may be reasonable to require the party seeking curative measures to prove prejudice. *Id.* But none of these circumstances are present here.

If, as DriveTime alleges, Pauley Motor and Pettigrew entered into a kickback scheme, text messages between the two might provide highly relevant information. On the other hand, they might not—and at this point, we will never know. But the reason we will never know is that Pauley Motor failed to take reasonable measures to preserve the text messages, despite being on notice to do so via DriveTime's November 22, 2016 litigation hold letter. (Doc. 94-2, Litigation Hold Letter, expressly requesting Pauley Motor to preserve "text messages" stored on "PDAs (e.g. iPhones or Blackberries)"). It would be unjust to place the burden of proving prejudice on DriveTime under these circumstances. And while Pauley Motor rightly points out that the record is devoid of any direct evidence of a kickback scheme, this fact alone does not conclusively establish that DriveTime has not been prejudiced by the loss of the text messages.

Accordingly, the Court will order curative measures under Rule 37(e)(1). The available measures are within the Court's discretion so long as they are "no greater than necessary to cure the prejudice" and "do not have the effect of measures that are permitted under subdivision (e)(2)." Rule 37(e)(1), Advisory Committee Notes, 2015 Amendment. In this case, the Court finds it appropriate to order that DriveTime will be permitted to introduce evidence at trial, if it wishes, of the litigation hold letter and Pauley Motor's subsequent failure to preserve the text messages. DriveTime may argue for whatever inference it hopes the jury will draw. Pauley Motor may present its own admissible evidence and argue to the jury that they should not draw any inference from Pauley Motor's conduct. *See, e.g., HLV, LLC v. Page & Stewart*, No. 1:13-CV-1366, 2018

9

WL 2197730, at *4 (W.D. Mich. Mar. 2, 2018) (permitting similar evidence to be presented at trial as a curative measure under Rule 37(e)(1)); *EPAC Techs., Inc. v. Thomas Nelson, Inc.*, No. 3:12-CV-00463, 2018 WL 3322305, at *3 (M.D. Tenn. May 14, 2018) (ordering a jury instruction to similar effect under Rule 37(e)(1)).

Additionally, "the Court recognizes that its ruling places [Pettigrew] in a precarious position." *HLV*, 2018 WL 2197730, at *4. In *HLV*, one defendant negligently disposed of his phone after receipt of a litigation hold letter, and the Court permitted introduction of similar evidence as outlined above as a discovery sanction. *Id.* Recognizing that an inference adverse to the negligent defendant would also affect an alleged co-conspirator who was not implicated in the disposal of the phone, the *HLV* court also permitted the alleged co-conspirator "to move for a jury instruction, if necessary, that he be held harmless for [the negligent defendant's] disposal of the phone—assuming the trial proofs are consistent with the conclusion that he did not take part in [the] disposal of the phone." *Id.* The Court finds a similar allowance for Pettigrew to be appropriate here: he may move for a jury instruction, if necessary, that he be held harmless for Pauley Motor's failure to preserve the text messages, assuming the trial proofs are consistent with the conclusion that he did not take part in Pauley Motor's loss of the text messages.

Finally, in ruling on the defendants' motions for summary judgment, any inferences to be drawn from Pauley Motor's negligent failure to preserve the text messages must be left to the finder of fact. Thus, the Court will not bind itself to any adverse inference at this stage.

### III. PETTIGREW'S AND PAULEY MOTOR'S MOTIONS FOR SUMMARY JUDGMENT

#### A. Standard of Review

Pettigrew and Pauley Motor move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Summary judgment is appropriate when "there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Berryman v. SuperValu Holdings, Inc.*, 669 F.3d 714, 716–17 (6th Cir. 2012). The Court's purpose in considering a summary judgment motion is not "to weigh the evidence and determine the truth of the matter" but to "determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A genuine issue for trial exists if the Court finds a jury could return a verdict, based on "sufficient evidence," in favor of the nonmoving party; evidence that is "merely colorable" or "not significantly probative," however, is not enough to defeat summary judgment. *Id.* at 249–50.

The party seeking summary judgment shoulders the initial burden of presenting the Court with law and argument in support of its motion as well as identifying the relevant portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). If this initial burden is satisfied, the burden then shifts to the nonmoving party to set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *see also Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (after burden shifts, nonmovant must "produce evidence that results in a conflict of material fact to be resolved by a jury").

In considering the factual allegations and evidence presented in a motion for summary judgment, the Court "views factual evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor." *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009). But self-serving affidavits alone are not enough to create an issue of fact sufficient to survive summary judgment. *Johnson v. Washington Cty. Career Ctr.*, 982 F. Supp. 2d 779, 788 (S.D. Ohio 2013) (Marbley, J.). "The mere existence of a scintilla of evidence to

support [the non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995); *see also Anderson*, 477 U.S. at 251.

**B.     Discussion**

Pettigrew and Pauley Motor seek summary judgment on all remaining claims against them. The Court will consider each claim in turn.

### 1.     Count 1: Theft of the gift cards by Pettigrew

DriveTime's claim for theft against Pettigrew arises out of Ohio Revised Code § 2703.61, which authorizes the recovery of damages from "any person . . . who commits a theft offense" by a property owner who "brings a civil action pursuant to division (A) of section 2307.60 of the Revised Code." § 2307.61(A). Section 2307.60(A) provides that "[a]nyone injured in person or property by a criminal act has, and may recover full damages in, a civil action unless specifically excepted by law." DriveTime asserts the underlying theft offense is satisfied by Ohio Revised Code § 2913.02, which states:

> (A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
>
> (1) Without the consent of the owner or person authorized to give consent;
>
> (2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent;
>
> (3) By deception;
>
> (4) By threat;
>
> (5) By intimidation.

Pettigrew makes two arguments in favor of summary judgment on DriveTime's claim against Pettigrew for theft of the gift cards: (1) DriveTime was never the "owner" of the gift cards

12

and (2) Pettigrew never "obtained" or "exerted control" over the gift cards. Both arguments lack merit.

First, "owner" is defined under the statute as "any person, other than the actor, who is the owner of, who has possession or control of, *or who has any license or interest in property* or services . . ." Ohio Rev. Code § 2913.01(D) (emphasis added). DriveTime has offered evidence that Pauley Motor offered a gift card to every winning bidder who purchases its vehicles. (Doc. 96, Pauley Dep. at 44). Pettigrew disputes that he was offered gift cards by Pauley Motor (Doc. 77, Pettigrew Dep. at 104), but viewing the evidence in favor of DriveTime, there is evidence that once Pettigrew's bid on a Pauley Motor vehicle was accepted, the gift cards were offered to Drive Time. Thus, there is an issue of fact as to whether DriveTime acquired an "interest in" the gift cards sufficient to satisfy §§ 2913.01 and 2913.02.

Second, although Pettigrew testified that he never accepted or took possession of any gift cards offered by Pauley Motor (Doc. 77, Pettigrew Dep. at 104), and DriveTime has offered no evidence in dispute, he nevertheless made the decision on behalf of DriveTime to decline acceptance of the gift cards. Moreover, there is evidence in the record that it was DriveTime's policy that buyers were required to accept any gift cards or other valuable property offered to them, and to forward the items to DriveTime's home office. (Doc. 84, Tyler Dep. at 71–73; Doc. 80, Sarchett Dep. at 108). Pettigrew was offered the gift cards as DriveTime's agent, and he could have decided to accept them and forward them to DriveTime's home office. However, he made the decision on behalf of DriveTime, possibly in violation of DriveTime's policy, to decline them. Thus, even though he never "obtained" the gift cards, there is an issue of fact as to whether he "exerted control" over them sufficient to satisfy § 2913.02. Accordingly, Pettigrew is not entitled to summary judgment on DriveTime's claim for theft of the gift cards.

13

## 2. Count 2: Conversion of the gift cards by Pettigrew

Under Ohio law, the essential elements of conversion are: (1) plaintiff's ownership or right to possess the property at the time of the conversion; (2) defendant's conversion by a wrongful act or disposition of Plaintiff's property; and (3) damages. *Kuvedina, LLC v. Cognizant Tech. Sols.*, 946 F. Supp. 2d 749, 761 (S.D. Ohio 2013) (Watson, J.). Additionally, a demand and refusal are usually required to prove the conversion of property otherwise lawfully held. *Fenix Enterprises, Inc. v. M & M Mortg. Corp.*, 624 F. Supp. 2d 834, 843 (S.D. Ohio 2009) (Rose, J.).

Pettigrew reiterates his arguments that DriveTime was not the owner of, and that he did not exercise control over, the gift cards. However, the same facts noted *supra* regarding DriveTime's theft claim also establish issues of fact as to these elements of DriveTime's conversion claim. Accordingly, Pettigrew is not entitled to summary judgment on DriveTime's claim for conversion of the gift cards.

## 3. Count 3: Fraud by Pettigrew

Under Ohio law, the elements of fraud are: (1) a representation (or concealment of a fact when there is a duty to disclose) (2) that is material to the transaction at hand, (3) made falsely, with knowledge of its falsity or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, and (4) with intent to mislead another into relying upon it, (5) justifiable reliance, and (6) resulting injury proximately caused by the reliance. *Volbers-Klarich v. Middletown Mgt., Inc.*, 125 Ohio St. 3d 494, 501, 929 N.E.2d 434, 440 (2010).

Pettigrew argues that DriveTime's fraud claim must fail because he made no misrepresentations to DriveTime regarding the fair market value or price of the vehicles he purchased from Pauley. (Doc. 85, Mot. at 13–16). However, DriveTime's fraud claim also encompasses Pettigrew's failure to disclose the existence of the gift cards offered by Pauley Motor to winning bidders, as well as his failure to disclose the kickbacks he allegedly received from

14

Pauley Motor in exchange for purchasing Pauley Motor vehicles at higher prices. (Doc. 12, Am. Compl. ¶ 71). As to the gift cards, DriveTime has offered evidence to create an issue of fact as to whether DriveTime's policy required buyers to accept any promotional items offered by sellers and to forward the promotional items to DriveTime's home office. (Doc. 84, Tyler Dep. at 71–73; Doc. 80, Sarchett Dep. at 108). This policy, if proven, would create a duty on Pettigrew's part to disclose the existence of the gift cards, such that his practice of refusing the gift cards and not informing DriveTime that they had been offered would constitute a concealment of material fact in violation of a duty to disclose.

As to the alleged kickback scheme, DriveTime has also introduced sufficient evidence to create an issue of fact. While Pettigrew has argued, and DriveTime has not disputed, that DriveTime had available to it the vehicles' fair market value and the price Pettigrew paid for them, DriveTime counters that Pettigrew concealed the fact that he could have obtained the vehicles for lower prices but for the existence of the kickback scheme. DriveTime has introduced sufficient evidence of the kickback scheme to prevent summary judgment for Pettigrew.

First, Pettigrew paid noticeably more for Pauley Motor vehicles (on average 106.75% of NADA value) than he did for vehicles purchased from other sellers (99.53%). (Doc. 100, Resp. at 7; Doc. 100, Sarchett Dec. ¶¶ 3–7; Doc. 100-2, Vehicle Purchase Records). Additionally, Pettigrew paid noticeably more for Pauley Motor vehicles (106.75%) than did Tyler when he purchased vehicles from Pauley Motor (98.71%). (*Id.*). Further, Pettigrew's bank records demonstrate that on at least five occasions, he made cash deposits of at least $1,000 within 24 hours of making a purchase from Pauley Motor. (Doc. 100, Resp. at 8; Doc. 104, Bank Records; Doc. 100-2, Vehicle Purchase Records). And although Pettigrew argues that Pauley Motor vehicles simply commanded a higher price at auction (Doc. 63, Malave Dep. at 10–11), and that

15

the cash deposits were repayment installments from a loan Pettigrew made to a friend (Doc. 108, Reply at 4, citing Doc. 76, Pettigrew Dep. at 179–80), the Court decides a summary judgment motion by "view[ing] factual evidence in the light most favorable to the non-moving party and draw[ing] all reasonable inferences in that party's favor." *Barrett*, 556 F.3d at 511.

While DriveTime's evidence is circumstantial, the Court finds that DriveTime has sufficiently raised a genuine issue of material fact as to whether Pettigrew agreed to pay higher prices on Pauley Motor vehicles in exchange for cash remuneration by Pauley Motor. Accordingly, Pettigrew is not entitled to summary judgment on DriveTime's claim for fraud.

### 4. Count 4: Pettigrew's breach of the duty of good faith and loyalty

The parties agree that, as an employee of DriveTime, Pettigrew owed DriveTime a duty of loyalty. (Doc. 85, Pettigrew's Mot. at 19; Doc. 100, DriveTime's Resp. at 17–18). DriveTime's claim for breach of that duty stems from the same conduct underlying its theft, conversion, and fraud claims discussed *supra*. Pettigrew merely argues that because DriveTime lacks evidence of misconduct related to the gift cards and the kickback scheme, and because DriveTime has no additional evidence of his breach of the duty of loyalty, this claim must also fail. (Doc. 85, Mot. at 19–20). However, as discussed *supra*, DriveTime has offered evidence to create an issue of fact as to Pettigrew's obligation to turn over the gift cards and the existence of the kickback scheme. As a result, Pettigrew is also not entitled to summary judgment on DriveTime's claim for breach of the duty of loyalty.

### 5. Count 5: Unjust enrichment against Pauley Motor

Under Ohio law, the elements of unjust enrichment are: "(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment ('unjust enrichment')." *D.P. Dough Franchising, LLC v. Southworth*, No. 2:15-CV-2635, 2017

16

WL 4315013, at *14 (S.D. Ohio Sept. 26, 2017) (Sargus, C.J.) (citing *Source Assocs., Inc. v. Mitsui Chemicals Am., Inc.*, No. 5:15-CV-215, 2016 WL 828785, at *4 (N.D. Ohio Mar. 3, 2016) and *Hambleton v. R.G. Barry Corp.*, 465 N.E.2d 1298, 1302 (Ohio 1984)).

DriveTime's unjust enrichment claim is based on the "excessive and above market rates for vehicles purchased" from Pauley Motor by Pettigrew. (Doc. 12, Am. Compl. ¶ 84).[3] Pauley Motor first argues that no unjust enrichment claim can succeed as to the vehicle purchases because they were governed by contracts.

Pauley Motor is correct that ordinarily, there can be no recovery for unjust enrichment when the relationship between the parties is governed by a contract. *Aultman Hosp. Ass'n v. Cmty. Mut. Ins. Co.*, 46 Ohio St. 3d 51, 55, 544 N.E.2d 920, 924 (1989) (in the absence of fraud, illegality, or bad faith, plaintiffs may not recover in unjust enrichment and their only recourse is compensation in accordance with the terms of the written agreement). Pauley Motor further directs the Court to DriveTime's discovery responses in which DriveTime admits that (1) DriveTime "purchased vehicles from Pauley [Motor] at the Columbus Auto Auction," and (2) "subject to certain conditions," DriveTime "enters into a contract to purchase a vehicle" when it successfully bids on a vehicle at the Columbus Auto Auction. (Doc. 78-6, DriveTime's Resp. to Pauley Motor's Req. for Admis. at 3–4). Putting these two premises together, Pauley Motor argues, results in conclusive proof that DriveTime's purchase of vehicles from Pauley Motor were governed by express contracts between the parties. (Doc. 78, Reply at 2).

---

[3] In opposition to Pauley Motor's motion for summary judgment, DriveTime also argues that Pauley Motor was enriched by retaining gift cards that rightfully belonged to DriveTime. (Doc. 100, Resp. at 21). However, the gift cards were not included as a basis for unjust enrichment in the Amended Complaint. The Court therefore declines to consider the gift cards in relation to DriveTime's claim for unjust enrichment against Pauley Motor. *Tucker v. Union of Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005) (district court need not consider claim first raised in opposition to summary judgment).

17

However, DriveTime argues that vehicles at the Auction were sold on consignment, such that DriveTime entered into a contract with the Auction, and not with Pauley Motor. (*See* Doc. 100, Resp. at 22–23; Doc. 100-1, Sarchett Dec. ¶ 14). Curiously, although both parties argue that the vehicle transactions were governed by express contracts of some sort, neither directs the Court to any such contract in the record. An issue of fact therefore remains as to whether the vehicle purchases in question were governed by a contract between DriveTime and Pauley.

Pauley Motor further argues that, even if no contract between DriveTime and Pauley Motor governed the vehicle purchase transactions, Pauley Motor has still not been unjustly enriched because DriveTime received the very vehicles that it paid for. In support, Pauley Motor cites *Becker v. Cleveland Browns Football Co.*, No. 35169, 1976 WL 191104, at *2 (Ohio Ct. App. Sept. 30, 1976); *Gerboc v. ContextLogic, Inc.*, 867 F.3d 675, 679 (6th Cir. 2017); and *Phillips v. Philip Morris Companies Inc.*, 298 F.R.D. 355, 364 n. 10 (N.D. Ohio 2014) ("Under Ohio law, it would not be 'unjust' for sellers to retain the profits for a product that performed as promised."). In *Becker*, the court denied relief to plaintiffs who purchased season tickets, whose purchase price exceeded a ceiling price set by a Presidential executive order (which became effective only after the purchase), because the plaintiff "received the season tickets that he bargained for" and the price was not unlawful at the time the purchase was made. 1976 WL 191104, at *1–2. Similarly, in *Gerboc*, the court found that a misleading statement concerning how much the price of a pair of speakers had been marked down did not result in unjust enrichment to the seller because the buyer got the exact set of speakers he paid for. 867 F.3d at 679.

While these cases are somewhat analogous, DriveTime's use of individual buyers to purchase vehicles on behalf of the company adds an extra layer of complication. DriveTime argues, "[i]n absence of wrongdoing, [DriveTime] would have purchased the vehicles at a lower

18

price, as evidenced by the fact that Tyler's base cost for Pauley Motor purchases was 98.71% and Pettigrew's base cost for purchases from all other sellers was 99.53%." (Doc. 100, Resp. at 21). DriveTime's argument, in essence, is that Pettigrew purchased vehicles from Pauley Motor at prices outside the range of his authority to act on behalf of DriveTime—that Pettigrew could have purchased the vehicles at a lower price, but failed to do so, and Pauley Motor was unjustly enriched as a result.

But even if Pettigrew failed to obtain the lowest price he could for DriveTime, it does not necessarily follow that Pauley Motor's retention of the full purchase price is unjust. As the Sixth Circuit noted in *Gerboc*, "making money is still allowed." 867 F.3d at 679. While Pettigrew's actual authority to exceed the vehicle prices in DriveTime's buying guides is a disputed issue of fact, no party has argued that Pettigrew lacked apparent authority to purchase vehicles at the agreed-upon prices. In the absence of any kickback scheme, Pauley Motor would be entitled to rely on the apparent authority of DriveTime's buyers to purchase its vehicles at the price agreed to by the individual buyers. *Master Consol. Corp. v. BancOhio Natl. Bank*, 61 Ohio St. 3d 570, 576–77, 575 N.E.2d 817, 822–23 (1991). To hold otherwise would create an unworkable system in which corporate purchasers could second-guess the price agreed to by their representatives after the purchase was complete.

However, as discussed *supra*, DriveTime has introduced some evidence of a kickback scheme between Pauley Motor and Pettigrew such that unquestioned reliance on Pettigrew's apparent authority is not appropriate at the summary judgment stage. If the kickback scheme operated as DriveTime contends, then it would be unjust for Pauley Motor to retain the full purchase price of the vehicles. Accordingly, Pauley Motor is not entitled to summary judgment on DriveTime's claim for unjust enrichment.

## IV. CONCLUSION

For the foregoing reasons, Pettigrew's Motion for Summary Judgment and Pauley Motor's Motion for Summary Judgment (Docs. 78, 85) are **DENIED**. Further, DriveTime's Motion for Spoliation Sanctions (Doc. 94) is **GRANTED IN PART and DENIED IN PART**. Finally, the parties are directed to contact Magistrate Judge Vascura's chambers at (614) 719-3410 to schedule a mediation at their earliest convenience.

The Clerk shall remove Documents 78, 85, and 94 from the Court's pending motions list.

**IT IS SO ORDERED.**

*/s/ George C. Smith*
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**